IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GOLF WORKS, INC**., a New Mexico
Corporation,

    Plaintiff,

v.                                                                                            No. CV 09-0873 MV/GBW

**PHILIPPOS PHILIPPOU**, an individual;
**KATERINA, INC**., a New Mexico corporation;
**GRECO ENTERPRISES, INC**., a New Mexico
corporation; **LOGOS DEVELOPMENT, INC**.,
a New Mexico corporation; **PHILIPPOU, LLC**,
a New Mexico limited liability company; **CITY
OF LAS CRUCES**, a New Mexico municipality;
**JOHN DOES 1-20**; and **JOHN DOE CORPORATIONS
1-20**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant the City of Las Cruces' *Motion for Summary Judgment*, filed November 19, 2009 (Doc. 12). The Court has also considered the City's *Notice of Possible Jurisdictional Issue*, filed February 2, 2010 (Doc. 18), and Plaintiff Golf Works, Inc.'s response to that Notice, *see* Doc. 20. The Court concludes that it has jurisdiction over this case[1] and that the City is entitled to summary judgment on Golf Work's claims against it.

---

[1] The City has brought to the Court's attention the case of *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). Under *Williamson*, a takings claim brought under the Fifth Amendment of the United States Constitution and challenging the application of land-use regulations is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. A takings claim may also not be ripe if, after a taking, the plaintiff "did not seek compensation through the procedures the State has provided for doing so." *Id.* at 194. Because there are no factual allegations in this case to support a claim that the City took Golf Work's property through application of a land-use regulation, and, indeed, no factual allegations to demonstrate a "taking" of Golf Work's property at all, as discussed below, the Court concludes that *Williamson* does not preclude this Court's jurisdiction over Golf Work's claims.

**I.     Legal standards**.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**II.    Factual and procedural background.**

Golf Works and Defendant Katerina, LLC, through its manager Defendant Philippos Philippou [hereinafter collectively referred to as "Katerina"], began negotiating in January 2007 for Golf Works to build a golf course [the "Project"] in Las Cruces on property that Katerina was developing. *See* Doc. 4, Att. 2 at 6 (Amended Complaint). "Katerina was to supply water for the Project." *Id.* at 11. In its bidding documents issued in December 2006, Katerina represented that "after early March 2007, construction water would be made available for the contractor's use . . . ." *Id.* Katerina knew at the time it issued its bidding documents that the City, "through the exercise of its development approval authority, had created a legal dispute over whether Moongate [Water Company] or the City would provide the water necessary for the Project." *Id.* at 6. This legal dispute was created because, at the time the City conditioned its approval of Katerina's development/Project on the City supplying the water to it, Moongate held a legal right to provide water to the development/Project area. *See id.* at 3, 11. Therefore, the City, supported by Katerina,

2

brought an action before the New Mexico Public Regulation Commission "seeking to prevent Moongate from providing water service to the area" where the Project was located. *Id.* at 11. And, because the City's approval of the Project required City-supplied water, on January 2, 2007, Katerina specifically "told Golf Works that potable water from the City of Las Cruces well east of the jobsite would be used for the Project.[2]" *Id.* at 6.

But, according to Golf Works, Katerina allegedly knew in January 2007 that "the City did not have the ability [at that time] to deliver water to the Project," and Katerina did not tell Golf Works that Moongate was "physically capable of, and legally entitled to, deliver the water necessary for the building and completion of the Project." *Id.* at 3.

Based on an "oral contract," Golf Works "committ[ed] its resources and perform[ed] substantial work on the Project" between January and March 2007. *Id.* Golf Works alleges that, at Katerina's "behest," Golf Works "contracted with Moongate for water to the Project," between February and June 2007. *Id.* at 7. Moongate delivered water through a 2-mile-long water pipe to the Project, and Katerina reimbursed Golf Works for that cost. *Id.* After Katerina represented to Golf Works, as an "inducement" to convince Golf Works to sign a written contract, that water would be available by April 15, 2007, Golf Works and Katerina executed on March 19, 2007, the Project contract for almost 5.9 million dollars. *See id.* at 6; *see* Doc. 12, Ex. A. But Katerina "did not deliver or make available the delivery of water on April 15, 2007." *Id.* at 7. Nevertheless,

---

[2] Although Golf Works also alleged in the Amended Complaint that Katerina "knew but did not tell Golf Works that the City was to be the water provider for the Project," Doc. 4, Att. 2 at 3, this allegation contradicts Golf Work's subsequent allegation that on January 2, 2007, Katerina specifically informed Golf Works that the water would come from the City's well east of the Project, *see id.* at 3. Because Golf Works is specific about both the date it was told that the City would provide the water and the source of the water, the Court accepts the later statement as true for purposes of summary judgment.

apparently by using Moongate-supplied water, Golf Works completed, and was paid for, the majority of the Project.

In July 2007, however, after Katerina and the City entered into a bulk-water-supply agreement for the City to supply water to the Project, Katerina ordered the water line from Moongate to the Project to be destroyed, and Katerina laid a two-and-a-half mile-long water line from the Project to a City water line. *See id.*; *id.* at 12. The bulk-water agreement provided that Katerina would indemnify the City for any legal action that Moongate might bring against the City[3]. *See id.* at 10. The water line, however, did not deliver sufficient water necessary to complete the Project, so construction came to a halt from May 2008 until September 2008, when Katerina was finally able to deliver sufficient water for its completion. *See id.* at 7-9. During the interim period, the Project was damaged by weather, requiring additional work to complete the Project for which Katerina refused to commit payment. *See id*. at 9. Golf Works contends that, between August 2007 and September 2008, Moongate installed a water line "adjacent to the golf course" that was capable of delivering sufficient water for the Project, but that Katerina did not advise Golf Works of that fact or make water from that line available to it. *Id.* at 7-8.

According to Golf Works, Katerina paid Golf Works $6,049,360.06 under the Contract for the Project, but refused "to pay $336,244.97 for undisputed work plus $3,384.43 in retainage for this work. . . . [and] Golf Works has suffered $150,528.00 in equipment delay damages, $73,540.20 in extended home office overhead delay damages, and $33,120.00 in extended jobsite overhead delay damages." Doc. 9, Ex. 1.

---

[3] The City states that "Moongate has brought an antitrust claim against the City (*Moongate Water Company, Inc. vs. City of Las Cruces , et al.*, Third Judicial District Court Cause No. CV-2006-1289), but [Golf Works] is not a party to that proceeding." Doc. 16 at 5-6.

Golf Works filed a complaint in state court on July 29, 2009 against Katerina and the other private Defendants for "Fraud in the Inducement; Loss of Economic Opportunities," alleging that the Defendants "fraudulently induced Golf Works to enter into a transaction to construct . . . the Project by intentionally creating a false impression of the material risks concerning the water necessary for the Project" on which Golf Works reasonably relied.  Doc. 10, Att. 1 at 1-3.  Besides the direct damages mentioned above, Golf Works also alleged damages in the loss of its bonding capacity, the revocation of its $200,000 letter of credit from its bank, and the loss of opportunities to bid on and perform other work.  *Id.* at 3.  Golf Works sought $1,260,000 in damages.

On August 12, 2009, Golf Works amended its Complaint to add claims against the City brought under 42 U.S.C. § 1983 and state law for alleged violation of its due-process rights under Article II, sections $4^4$ and $18^5$ of the New Mexico Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.  It contends that the City "interfered with Golf Work's property rights in the contract by creating the situation where Golf Works was not given access to the water it needed to complete the Contract."  Doc. 4, Att. 2 at 12.  It contends that the City "adopted" undescribed "policies that deprived Golf Works of property rights without due process of law."  *Id.*  And it alleges that the City caused the breach of the Project contract by

---

[4] Article II § 4 of the New Mexico Constitution provides:

All persons are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness.

[5] Article II § 18 of the New Mexico Constitution provides, in relevant part:

No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws. Equality of rights under law shall not be denied on account of the sex of any person.

"coercing" Katerina not to use water that was available from Moongate, and by "consciously interfer[ing] in the provision of water to complete the Contract, thereby depriving Golf Works of its interest in the Contract without due process and without just compensation," in violation of both Constitutions.  *See* Doc. 4, Att. 2 at 9, 13.  Golf Works contends that the City is therefore liable to it for the loss of "all beneficial use of its property under the Contract," including "the loss of payment for work performed;" "the loss of payment for the remaining work to be performed under the Contract;" the loss of its bonding capacity; the revocation of its $200,000 letter of credit; and the loss of opportunities to bid on and perform other work.  *Id.* at 14.

The City removed the case to this Court on September 14, 2009.  *See* Doc. 4.  The Court recently granted the Philippou Defendants' motion to compel arbitration, and stayed the judicial proceedings against those Defendants.  *See* Doc. 21.

**III.     Analysis.**

Under the Fifth Amendment to the United States Constitution, "private property [shall not] be taken for public use, without just compensation."  This clause prevents "Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Penn Cent. Transp. Co. v. City of N.Y.,* 438 U.S. 104, 123 (1978) (internal quotation marks omitted).  "Before a federal court can properly determine whether the state has violated the Fifth Amendment [takings clause], the aggrieved property owner must show first that the state deprived him of his property, and second, that the state refused to compensate him for his loss." *Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991).  The City contends that, even assuming that Golf Works' factual allegations are true, "no taking occurred in this case, as a matter of law" because "a frustration of contract expectations caused by the actions of a government entity is not a taking" under the United States Constitution.  Doc. 12 at 1-2.

6

Despite its citation to the takings clause of the Fifth Amendment, and its contention that the City took or destroyed its property rights without just compensation, Golf Works argues that the City misunderstands its claims. *See* Doc. 15 at 13. Golf Works' "true" claim, it contends, is that the City "wrongfully acted" to harm Moongate, the City's competitor, which also "caused direct harm" to Golf Works. *See id.* But Golf Works has cited no authority for its argument that wrongful conduct aimed at a third party can provide the basis for a takings claim, especially in the absence of an actual "taking" of Golf Work's Project Contract and where the allegedly wrongful conduct occurred before Golf Works ever entered into any contract with Katerina.

The Amended Complaint alleges that the City required Katerina to agree to allow the City to provide the water for the Project as a precondition to the approval of the development/Project notwithstanding Moongate's right to provide water to the development/Project area long before Katerina and Golf Works entered into their Project Contract. The subsequent July 2008 water agreement between Katerina and the City simply acknowledged and finalized that precondition. It was therefore impossible for the City to "take" Golf Work's Contract when it imposed the allegedly wrongful water-supply precondition in 2006 because, at that time, Golf Work's Contract did not exist. Nor did the City ever "take," assume, or alter the Project Contract; instead, Golf Works apparently performed and was paid for the majority of the Contract and it is suing for contractual damages and for fraud/misrepresentation under tort law. The Court concludes that Golf Works has failed to state a cognizable claim under § 1983 through violation of the takings clause of the Fifth Amendment. *See e.spire Commc'ns., Inc. v. N. M. Pub. Reg. Comm'n.,* 392 F.3d 1204, 1210 (10th Cir. 2004) ("In order to prevail on a takings claim, [a plaintiff] must establish 1) that it had a protectable property interest and 2) that the governmental action is a taking without just compensation.").

The City also has shown that it is entitled to summary judgment on Golf Work's claim that the City deprived Golf Works of its property interest in the Project Contract without due process, thereby violating Golf Work's due-process rights under the Fourteenth Amendment to the United States Constitution, and Article 2, Sections 4 and 18 of the New Mexico Constitution.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1236 (10th Cir. 2007). Golf Works summarily concludes that the City "destroyed [its] property right" in the Project Contract. That conclusion is erroneous, however, as belied by the very fact that Golf Works has been paid over $6 million on the Contract and is suing Katerina based, in part, only on a partial breach of the Contract.

In Golf Work's response to the motion for summary judgment, it contends that "the lack of sufficient water caused by the City's actions resulted in Katerina's breach of the contract and represented an intentional deprivation of the property right without due process for which Golf Works has no remedy but the filing of this lawsuit." Doc. 15 at 6. But, as mentioned above, the Amended Complaint establishes that the City's actions resulting in Katerina having to use City water instead of Moongate water to develop the Project occurred *before* Golf Work's property interest in the Contract ever existed. And Golf Work's Amended Complaint further establishes that Golf Works had sufficient water for the majority of the Project until July 2007 and that the City had both a designated well and a water line to which Katerina connected after July 2007. The Amended Complaint further alleges that it was the water line "laid by" Katerina that "was not capable of providing the water sufficient for full construction of the Project," Doc. 4, Att. 2 at 7, and not the complete absence of a City water supply, that was the problem. Golf Works alleges that Katerina was, in fact, able to provide sufficient water from the City supply in September 2008. Thus it seems

clear that Katerina's alleged breach in delaying the supply of sufficient water to complete the Project was caused by Katerina's decision to have Golf Works begin the Project before Katerina had done the work necessary to obtain sufficient water from the City supply to finish it, as apparently required by the condition of development approval that the City imposed in 2006. Golf Works has failed to point to a property interest of which the City deprived it without due process.

Golf Works also argues that the City has deprived it of procedural due process because it cannot sue the City for interference with contract under New Mexico state law and therefore has no "adequate post-deprivation remedy under state law," citing *Parratt v. Taylor*, 451 U.S. 527, 536-44 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Doc. 15 at 13. Again, as in its "takings" claim, Golf Works has not satisfied the preliminary requirement to allege facts showing that the City deprived it of the Project Contract. *See Parratt*, 451 U.S. at 539 (noting that adequate post-deprivation procedures may satisfy procedural due process *if* there has been a taking). Because no facts support a finding that the City has assumed, altered, or otherwise deprived Golf Works of its rights in the Project Contract, Golf Works cannot state a claim for violation of § 1983 or of the New Mexico Constitution on the basis of alleged violation of its right to procedural due process.

**IT IS ORDERED** that the City's Motion for Summary Judgment is GRANTED and Golf Work's claims against the City are DISMISSED WITH PREJUDICE.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE